UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
-----------------------------X  Docket#
                             :  18-CR-00633(ERK-6)
UNITED STATES OF AMERICA,    :
                             :
                             :
     - versus -              :  U.S. Courthouse
                             :  Brooklyn, New York
ZHUKOV, ET AL.,              :
                             :  December 3, 2021
              Defendants     :  2:47 p.m.
-----------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
BEFORE THE HONORABLE ERIC R. KOMITEE
UNITED STATES DISTRICT JUDGE

A  P  P  E  A  R  A  N  C  E  S:


**For the Government**:    **Breon S. Peace, Esq.**
United States Attorney


         BY:   **Saritha Komatireddy, Esq.**
**Artie McConnell, Esq.**
**Alexander Mindlin, Esq.**
Assistant U.S. Attorneys
271 Cadman Plaza East
Brooklyn, New York 11201


**For the Defendant**:    **George C. Grasso, Esq.**
Of Counsel
Bukh Law Firm PLLC
1123 Avenue Z
Brooklyn, NY 11235


**Transcription Service**:    **Transcriptions Plus II, Inc.**
61 Beatrice Avenue
West Islip, New York 11795
RL.Transcriptions2@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1           THE COURT:  Please be seated, everyone.

2           THE CLERK:  He doesn't need the interpreter?

3   Is that what you said?  She'll be on standby.

4           THE DEFENDANT:  Yes.

5           THE CLERK:   Criminal Cause for Sentencing, *The*

6   *United States of America v. Sergey Ovsyannikov*, Docket

7   Number 18-CR-633.

8           Would you all please state your appearances for

9   the record starting with the government?

10           MR. MINDLIN:  Yes.  Good afternoon, your Honor.

11   For the government, AUSA Alexander Mindlin.  Beside me

12   are my colleagues, AUSA Artie McConnell and Saritha

13   Komatireddy, and our case agent Detective Mark Rubens.

14           THE COURT:  Good afternoon.

15           MR. MINDLIN:  As well as probation -- pardon

16   me, ma'am.  Go ahead.

17           MS. LOPEZ:  Good afternoon, your Honor.  Alyssa

18   Lopez, United States Probation Department.

19           THE COURT:  Good afternoon.  Welcome.

20           MR. GRASSO:  Good afternoon, your Honor.

21   George C. Grasso of counsel for Bukh Law Firm, 1123

22   Avenue Z, Brooklyn, New York.

23           THE COURT:  Good afternoon.  And good afternoon

24   to the defendant.  Would you pronounce your name for me?

25           THE DEFENDANT:  Sergey Ovsyannikov.  Good

3

Proceedings

1  afternoon.

2          THE COURT:  Good afternoon.

3          THE CLERK:  I just want to -- and we're joined

4  by Russian interpreter Isabelle Avrutin.  Would you

5  please stand and raise your right hand?

6                    (Interpreter sworn)

7          THE CLERK:  Would you state your name for the

8  record, please?

9          THE INTERPRETER:  Isabelle Avrutin.

10         THE CLERK:  Thank you.

11         THE COURT:  Okay.  So good afternoon, everyone.

12 We are here, as you all know, for sentencing in this case

13 today.  Is the interpreter on standby or are we

14 simultaneously interpreting?

15         THE INTERPRETER:  I was told that I should be

16 on standby.

17         THE COURT:  Okay.  All right.  So I'll advise

18 the defendant if there's anything that anyone says that

19 you don't understand fully, feel free to raise your hand

20 and let us know and we will make sure to repeat anything

21 you may have missed.  Obviously, the person -- you and I

22 are the two people here who most need to understand

23 what's being said by everybody today and I'll be happy to

24 stop anybody who I don't understand fully and you should

25 feel free to speak up if there's anything you don't

4

Proceedings

1   understand as well.  Do you understand?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  Okay.  You speak English at some

4   level?

5            THE DEFENDANT:  Yes, sir.

6            THE COURT:  Okay.  Would you like the entirety

7   of today's proceeding to be translated?

8            THE DEFENDANT:  I think not.  I can understand

9   clearly what you are saying.

10           THE COURT:  Okay.  All right.  Any combination

11  you want is fine with me.  So as I say, feel free to

12  speak up when appropriate.

13           The sentencing today is on three counts of

14  conviction, to having to do with wire fraud and wire

15  fraud conspiracy, and one to do with aggravated identity

16  theft.  And before we begin, I will explain my process

17  for this proceeding today.

18           First of all, I'm going to remove the mask that

19  I'm wearing.  I'm behind this Plexiglas divider here and

20  fully vaccinated.  And to the extent I'm speaking for

21  extended periods of time, it will help me and the clarity

22  of the recording that we are making to be without the

23  mask.  We are making an electronic sound recording of

24  today's proceedings and so it will be important that

25  anybody who's speaking find themselves fairly close to

5

Proceedings

1    the microphone in front of them.

2              So my process for today, first of all, I'll say

3    a word about the counts of conviction.  Second, I'll list

4    the submissions that I've received and considered in

5    connection with sentencing.  And the purpose of doing

6    that is to assure myself that I received everything the

7    parties believe I should have received and that you all

8    have received everything that anyone else believes you

9    should have received such that we are all working off the

10   same information.

11             Next, we will discuss the pre-sentence report

12   prepared by the probation department.  I understand there

13   have been a couple of rounds of objections thereto.

14   There was an amendment issued recently.  We will proceed

15   accordingly.

16             Next, under federal sentencing law, I must

17   determine what the guidelines range is under the

18   sentencing guidelines system.  The United States

19   Sentencing Guidelines, as you now know from the plea

20   hearing, are advisory which means I am not bound to

21   follow them, but I still must determine what the

22   guidelines range is and I must consider the guidelines as

23   well as any departures therefrom that might apply.

24             After that, I will give the attorneys an

25   opportunity to address the Court and to make arguments.

6

Proceedings

1   And then the defendant shall have the right, if he

2   chooses, but not the obligation to make a statement to

3   the Court before I impose sentence.

4           Once all of that has happened, I will most

5   likely step out for a five or ten minute break just to

6   collect my thoughts on everything I have just heard.  And

7   when I return, I will review the sentencing factors under

8   the United States Code in order to tell you what factors

9   I think go into determining the appropriate sentence.  By

10  statute those include your personal history, the offense

11  conduct, and many other factors that we will discuss.

12  And following that discussion, I will impose sentence.

13          Do you understand the process?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Do you have any questions at this

16  point?

17          THE DEFENDANT:  No, sir.

18          THE COURT:  Does the government wish to have

19  any victims present in the courtroom?

20          MR. MINDLIN:  No, your Honor.

21          THE COURT:  All victim notifications that you

22  believe are required have been made?

23          MR. MINDLIN:  Yes.

24          THE COURT:  Okay.  All right.  So turning to

25  the defendant's plea of guilty, he pleaded guilty before

7

Proceedings

1   Magistrate Judge Gold on September 24, 2019 to three

2   counts of a 13 count indictment.

3            Count 1 charged conspiracy to commit wire fraud

4   in violation of 18 U.S. Code Sections 1343 and 1349

5   between September 2014 and December 2016.

6            And count 5, alleged conspiracy to commit wire

7   fraud in violation of the same statutes but for a

8   different time period.  This time between December 2015

9   and October 2018.  And the government should correct me

10  if I get any of this wrong in any way.  Or anybody should

11  correct me I should say.

12           And also, the plea of guilty to count 7 of the

13  indictment which alleged aggravated identity theft in

14  violation of 18 U.S. Code Section 1028A(a)(1) in that

15  case between December 2015 and October 2018.  Are we all

16  on the same page there?

17           MR. MINDLIN:  Yes, your Honor.

18           MR.  GRASSO:  Yes, your Honor.

19           THE COURT:  Okay.  And I've received and

20  reviewed the transcript of the defendant's plea before

21  Magistrate Judge Gold.  Starting with defense counsel, is

22  there any reason I should not accept the plea in this

23  case?

24           MR. GRASSO:  No, your Honor.

25           THE COURT:  From the government?

8

Proceedings

1          MR. MINDLIN:  No, Judge.

2          THE COURT:  Okay.  Based on the information

3  contained in the transcript, including the allocution and

4  also in the pre-sentence report that I received, I now

5  accept the guilty plea.  The record demonstrates that the

6  plea entered before Judge Gold was entered knowingly and

7  voluntarily and that there exists a factual basis for it.

8  Accordingly, I adjudicate the defendant guilty of those

9  three offenses.

10         Let me turn now to just listing the documents

11 that I have received in connection with today's

12 proceeding.

13         First, the pre-sentence report dated September

14 17, 2021.  I think all dates will be 2021.  The probation

15 department's sentencing recommendation dated that same

16 day.  The sentence recommendation is a statement from the

17 probation department as to what they believe the

18 appropriate sentence in this case would be.  It is not

19 binding on me.  But the probation department sees every

20 defendant sentenced in this district and they have a lot

21 of important context, more than any individual judge

22 does.  And because I consider the probation department's

23 recommendation to be relevant to my thinking, I typically

24 discuss it on the record and inform the parties if

25 they're not already aware of what the recommendation is.

9

Proceedings

1      I also have the defendant's sentencing

2  memorandum dated November 22nd and four exhibits filed

3  therewith.

4      Exhibit 1 was a series of letters in support

5  including from the defendant's parents, wife, a teacher,

6  former colleagues, and an inmate at the MDC.

7      Exhibit 2 thereto was a letter from the

8  defendant's wife.

9      Exhibit 3 is a table produced by the United

10 States Sentencing Commission showing the extent of

11 certain departures listed by type of crime.

12     And Exhibit 4 is a letter from the defendant

13 himself.

14     We have objections to the PSR from the defense

15 dated November 22nd.  And I think those are the

16 objections that the defense has now moved to withdraw.

17 Is that correct?

18     MR. GRASSO:  That is correct, your Honor.  We

19 have discussed it with the government and I think that

20 everything is resolved.

21     THE COURT:  Okay.  So I have that document.

22 I've reviewed it, but I also grant at this point the

23 motion to withdraw it.

24     MR. GRASSO:  Thank you, Judge.

25     THE COURT:  I have the government's sentencing

10

Proceedings

1   submission dated November 23rd, and I have an amended
2   version of the pre-sentence report that the probation
3   department filed yesterday, December 2nd, that to a
4   degree took into account the defendant's objections that
5   we just discussed.
6          Again, beginning with the defense, is there
7   anything else I should have that I did not list there?
8          MR. GRASSO:  No, your Honor, I believe that
9   covers it.
10         MR. MINDLIN:  Your Honor, the defendant filled
11  out a financial affidavit today.
12         THE COURT:  Yes.
13         MR. GRASSO:  Yes.
14         THE COURT:  Yes, I should add that.  I just
15  received within the last hour or so a financial
16  affidavit.  The actual title of the document is United
17  States Department of Justice Financial Statement, and
18  it's on a DOJ form where the form itself is dated
19  December of 2016.  And it's 35 pages long.  And the copy
20  I have is signed by the defendant and dated today's date
21  by the signature box.  And I assume we will be discussing
22  the financial affidavit at one or more points today.
23         Let me ask defense counsel have you and your
24  client had an opportunity to read and discuss the pre-
25  sentence report in its entirety?

11

                         Proceedings

1           MR. GRASSO:  Just earlier today, your Honor.

2           THE COURT:  I'm not talking about the addendum

3    now, I'm talking about the PSR itself.

4           MR. GRASSO:  The PSR, yes.

5           THE COURT:  You discussed it today for the

6    first time?

7           MR. GRASSO:  No, no.  Personally, yes.  My

8    office has discussed it with him at length.

9           THE COURT:  When you say your office, is that

10   Mr. Fukh?

11          MR. GRASSO:  Mr. Bukh.  Correct.

12          THE COURT:  Bukh.  Okay.  Let me ask the

13   defendant, do you wish for any additional time to discuss

14   the PSR, pre-sentence report, or any addendum to that

15   document with your counsel who's present here today?

16          THE DEFENDANT:  No, Your Honor.  I already

17   discussed several times.

18          THE COURT:  With Mr. Bukh?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Okay.  So putting aside, and this

21   is a question for defense counsel again, putting aside

22   the guidelines calculations which we'll take up in a few

23   moments, do you have any remaining objections to the pre-

24   sentence report putting aside the guidelines calculation?

25          MR. GRASSO:  No, your Honor.

Proceedings

1          THE COURT:  Okay.  Is either party seeking an

2     evidentiary hearing on any issue today beginning with the

3     defense?

4          MR. GRASSO:  No, your Honor.

5          MR. MINDLIN:  No, your Honor.

6          THE COURT:  Okay.  All right.  So turning next

7     to the advisory guidelines calculation, let me begin just

8     by confirming that both parties agree it's the 2018

9     version of the guidelines that applies.  Is that correct?

10         MR. MINDLIN:  Yes, Judge.

11         MR. GRASSO:  Yes, Judge.

12         THE COURT:  Okay.  So there is a dispute of

13    sorts I suppose about the application of the leadership

14    role enhancement.  It appears at Note 1 in the

15    government's sentencing memorandum.  I take it we're --

16    hold on just one second.  So the PSR contains a three

17    level enhancement adjustment I should say for role in the

18    offense.  The government articulates the view that the

19    defendant really was a leader and therefore the four

20    level enhancement is appropriate.  Is that correct?

21         MR. MINDLIN:  Yes, that's the government's

22    view, your Honor.

23         THE COURT:  Okay.  I think that's right based

24    on the facts.  I think the facts laid out in the PSR

25    itself and in the indictment really leave no question

13

Proceedings

1  that that's the correct view.  The defendant was a

2  substantial owner of the business, not the 100 percent

3  owner but entitled I think to 50 percent of the profits,

4  exercised supervisory authority over people below him in

5  the scheme, recruited people to participate in the

6  scheme.  Does the defense dispute the role enhancement

7  for leadership role?

8           MR. GRASSO:  I think that the main dispute from

9  the defense is the dichotomy, and this somewhat lies in

10  semantics I suppose, but the dichotomy in my client's

11  role of leadership in these organizations as opposed to

12  the co-defendant, Mr. Zhukov, and that Mr. Zhukov

13  actually masterminded the operation.  If it was to be

14  looked at from the point of view legal causation, I would

15  say that but for Mr. Zhukov's masterminding of the

16  situation, then we may not be sitting here today.

17           THE COURT:  Okay.  But --

18           MR. MINDLIN:  Your Honor --

19           THE COURT:  -- it's not -- yes.  Please.

20           MR. MINDLIN:  If I could briefly address the

21  matter, your Honor?

22           Mr. Ovsyannikov and Mr. Zhukov of course led

23  separate schemes.  Mr. Ovsyannikov provided some

24  technical assistance to Mr. Zhukov in his scheme which is

25  why he's charged with respect to those schemes.

14

Proceedings

1        With respect to Mr. Ovsyannikov's scheme, the
2   government agrees with the Court that he was a leader in
3   that scheme. ███ ███████ ████████ █ ██████ █████ ███████
    █ ██████ ████████ ████ █████ ████ █████████ ████ ████ ███
    █ █████ ██████ ██████ █████ █████████ ████ ████ ████ ████
    █ ████████ █████ ████ █████ █████████ █ ████ ████████ ████
    █ ██████████ ████████      And of course, it's a one point
8   difference in the offense level, your Honor.
9           THE COURT:  Yes.  We are talking about a fairly
10  minor difference in the offense level and not one, I
11  don't believe, that will affect where I ultimately come
12  out here but I still want to get the guidelines
13  calculation right.  And so let me just ask defense
14  counsel, you're not disputing that your client owned a
15  half share of Adzos?
16          MR. GRASSO:  No.
17          THE COURT:  If I'm pronouncing that correctly.
18          MR. GRASSO:  No, your Honor.  I'm not disputing
19  my client's interest in these organizations or his share
20  of interest.
21          THE COURT:  You're not disputing furthermore
22  that he recruited accomplices including Mr. Timchenko, is
23  that correct?
24          MR. GRASSO:  That's correct.
25          THE COURT:  You don't dispute that he exercised

15

Proceedings

1   overall responsibility for all technical aspects of the

2   scheme at Adzos?  Is that correct?

3          MR. GRASSO:  That is correct, your Honor.  I

4   don't want to get into semantics, you know.

5          THE COURT:  I mean tell me -- my ears did perk

6   up a little bit when you said that your client would not

7   be sitting here today but for Mr. Zhukov's conduct.  Is

8   that really true absent Mr. Zhukov your client would

9   still be living a law abiding life today with --

10          MR. GRASSO:  I believe that he was drawn into

11   the scheme by Mr. Zhukov.  They had a prior existing

12   relationship.  My client's not a hacker in the

13   traditional sense.  He is a very intelligent man but he

14   is --

15          THE COURT:  Those things are not mutually

16   exclusive obviously.

17          MR. GRASSO:  Of course not.  But he's not a

18   hacker.  He I think by his own admission would readily

19   state that Mr. Zhukov's technical knowledge in terms of

20   cybercrime and hacking goes far beyond my own client's.

21   And that's all.

22          THE COURT:  Okay.  Given the undisputed facts

23   that the defendant here, Mr. Ovsyannikov, owned a half

24   share of this Adzos entity and the profit entitlement

25   that carried with it, given his role in recruiting others

16

Proceedings

1  including Mr. Timchenko and given his broad

2  responsibility to oversee the technical aspects of Adzos'

3  participation here, I do believe that the leadership role

4  enhancement is appropriate.  And so when I calculate the

5  guidelines I will include the four level enhancement.  As

6  I say, I believe -- I could be surprised by information

7  still to come but at this point I believe that the

8  sentence I impose will be unaffected by the leadership

9  role enhancement whether it's three points or four

10 points.

11         MR. GRASSO:  Yes, your Honor.  And I don't mean

12 to make a mountain of a molehill by any stretch of the

13 imagination.  I just thought that it would be worth

14 pointing out.

15         THE COURT:  Thank you.  Okay.  I think that's

16 the only open question we had with respect to the

17 guidelines.  Is that correct from defense counsel's

18 perspective?

19         MR. GRASSO:  Yes, it is, your Honor.

20         THE COURT:  And from the government?

21         MR. MINDLIN:  Yes, your Honor.

22         THE COURT:  Okay.  All right.  So therefore,

23 with that one change, namely the imposition of the four

24 level enhancement for role, instead the three level, I

25 adopt the pre-sentence report in its entirety.  Correct?

17

Proceedings

1    I'm looking at the defense counsel now.

2              MR. GRASSO:  No objection, your Honor.

3              MR. MINDLIN:  Yes, your Honor.

4              THE COURT:  Okay.  So therefore, the offense

5    level calculation that applies is as follows.  We group

6    counts 1 and 5 for purposes of determining the base

7    offense level.  And under Section 2X1.1(a), the base

8    offense level we are working from is 7.

9              We add 22 levels to that base to reflect the

10   loss amount of $35,800,000 which on the loss table is

11   greater than 25 million but less than 65 million.  That's

12   a 22 level enhancement pursuant to Section 2B1.1(b)(1)(L)

13   as llama.

14             Because the offense involved ten or more

15   victims, we add another two levels.

16             And because a substantial part of the scheme

17   was committed from outside the United States, we add

18   another two levels.

19             We add the four level adjustment for role that

20   I mentioned and that leaves us with an adjusted offense

21   level on the wire fraud counts of 37.

22             We then turn to the adjustment for multiple

23   counts.  Count 7 is excluded from the grouping analysis

24   under Section 3D1.1(b)(2).  And thus we start with the

25   greater of the adjusted offense levels.  That's that of

18

Proceedings

1  group 1 or 37 as I just said with no increase in this

2  case under Section 3D1.4.  So after taking Count 7 into

3  account, we are still left with an adjusted offense level

4  of 37.

5          Does defense counsel agree with that?

6          MR. GRASSO:  By my simple algebra, your Honor,

7  yes.

8          THE COURT:  Okay.  The government agrees the

9  offense level we're working off here is 37?

10         MR. MINDLIN:  That's prior to the reduction for

11 acceptance of responsibility?

12         THE COURT:  Prior to the --

13         MR. MINDLIN:  Yes.

14         THE COURT:  Yes.  Minus three levels for

15 acceptance.  That leaves us with a total offense level of

16 34.  We learn from the PSR, and I think nobody's

17 disputing, that the defendant is in criminal history

18 category I.  And based on a total offense level of 34, a

19 criminal history category of I, the guidelines

20 imprisonment range on the sentencing table is 151 months

21 at the low end to 188 months at the high end of the

22 range.  Does defense counsel agree with that?

23         MR. GRASSO:  Yes, your Honor.

24         THE COURT:  And the government?

25         MR. MINDLIN:  Yes, Judge.

19

Proceedings

1          THE COURT:  Okay.  In terms of supervised
2   release, Counts 1 and 5 are Class C felonies and the
3   guidelines therefore imply a term of supervised release
4   of one year to three years.  Count 7 is a Class E felony
5   which means the guidelines provide for a one-year term of
6   supervised release.  The guidelines fine range is $35,000
7   at the low end and $350,000 at the high end under Section
8   5E1.2(c)(3).
9          Does the government agree with everything I've
10  just said?
11         MR. MINDLIN:  Yes, Judge.
12         THE COURT:  And the defense?
13         MR. GRASSO:  Yes, Judge.
14         THE COURT:  Okay.  And the parties have the
15  probation department's sentencing recommendation,
16  correct?
17         MR. MINDLIN:  Yes, your Honor.
18         MR. GRASSO:  Yes, your Honor.  I'm actually not
19  sure if I have a copy physically in front of me at this
20  moment but I have it and I have reviewed it.
21         THE COURT:  I'll just say for the defendant's
22  benefit and for the completeness of the record that the
23  probation department here has recommended a sentence of
24  68 months, six eight, on Counts 1 and 5 to run
25  concurrently to one another which means the same 68

20

Proceedings

1  months for both of those counts.  Plus 24 months custody

2  on Count 7 which they urge should run consecutively which

3  means be stacked on top of the 68 month sentence for

4  Counts 1 and 5 which would yield a total term of

5  incarceration of 92 months.  Let me turn to the probation

6  department now.  That is the correct --

7             MS. LOPEZ:  That's correct.

8             THE COURT:  -- summary of the probation

9  department's recommendation?

10            MS. LOPEZ:  Yes, your Honor.

11            THE COURT:  Okay.  And they recommend two years

12  of supervised release on Counts 1 and 5, one year on

13  Count 7, all to run concurrently.  Restitution in the

14  amount of $33,800,000 to be paid to Google due

15  immediately and payable at a rate of $25 while in custody

16  and a rate of 10 percent of gross monthly income

17  thereafter while on supervised release.  Probation

18  recommends no fine in light of the size of that

19  restitution order, that contemplated restitution order.

20            Does the defendant have any questions about

21  anything I've just said either for me or for your

22  attorney?

23            THE DEFENDANT:  No, your Honor.

24            THE COURT:  Okay.  Defense counsel, any

25  questions or corrections to anything I've just said?

21

Proceedings

1      MR. GRASSO:  Just to make sure that I heard you

2   correctly, your Honor, you said that the total

3   recommended was 92 months, correct?

4      THE COURT:  Yes.  Probation says that the

5   defendant should be sentenced to 68 months in custody in

6   each of Counts 1 and 5, but that those should run

7   concurrently with one another, so that's a grand total of

8   68 months, plus a consecutive term of 24 months on Count

9   7.  And by my arithmetic, 68 plus 24 is 92.

10      MR. GRASSO:  Thank you, your Honor.

11      THE COURT:  Okay.  In terms of the statutory

12   provisions we're dealing with here, each of Counts 1 and

13   5 carry a statutory maximum term of 20 years imprisonment

14   and a maximum supervised release term of three years.

15   There is no mandatory minimum on the wire fraud

16   conspiracy counts.  On Count 7, there is a statutory

17   mandatory minimum term of imprisonment of two years

18   pursuant to 18 U.S. Code Section 1028A(a)(1).  And the

19   term of imprisonment on Count 7 I am told must run

20   consecutively to any other counts under Section

21   1028A(a)(1).

22      Does the government agree with that

23   characterization?

24      MR. MINDLIN:  Yes, your Honor.

25      THE COURT:  That any time imposed on Count 7

22

Proceedings

1    must be consecutive?

2          MR. MINDLIN:  ███ ██ ██████ ██ █

███ ██████ ████ ███ ███ ████ ███ ███ ██ ████

█ ███████ ███ ██ ████ ██ █████ ████ ████

█ █████ █████ ██████ █████

6          THE COURT:  Okay.  But does that mean you can

7    ignore it for purposes of consecutive versus concurrent

8    or ignore it just in terms of what period of

9    incarceration gets ordered?  Do you see what I'm saying?

10         MR. MINDLIN:  You know what?  No, your Honor.

11   What I'm saying, and I suspect this is not going to

12   answer your question, is that the Court can give a total

13   sentence that does not have to account for any applicable

14   mandatory minimum under 1028A.

15         THE COURT:  Okay.  And then just in terms of

16   the mechanics of how we get there, I can either impose no

17   time on Count 7 or impose time on Count 7 but ignore the

18   requirement that that time run consecutively to Counts 1

19   and 5.  I mean I may be able to solve this problem

20   myself, but I just want to understand the lay of the land

21   here.

22         MR. GRASSO:  I would also have to check the

23   statute myself, your Honor, but my understanding is also

24   that the Court does have the discretion to break away

25   from the consecutive requirement that your Honor is

23

                              Proceedings

1    referring to.

2              MR. MINDLIN:  Your Honor, we think the time

3    must be consecutive.  It can be zero, but that zero must

4    run consecutively.

5              THE COURT:  Okay.  Let me just read the statute

6    myself.

7                        (Pause in proceedings)

8              THE COURT:  Yes, it's sort of odd.  So 1028A,

9    if you look at Section B thereunder it says,

10   "Notwithstanding any other provision of law, except as

11   provided in paragraph 4, no term of imprisonment imposed

12   on a person under this section shall run concurrently

13   with any other term of imprisonment imposed on a person

14   under any other provision of law including any term of

15   imprisonment imposed for the felony during which the

16   means of identification was transferred, possessed, or

17   used."

18             But then you look at paragraph 4 because of

19   except as provided in paragraph 4, and the statute says,

20   "A term of imprisonment imposed on a person for a

21   violation of this section may, in the discretion of the

22   Court, run concurrently in whole or in part only with

23   another term of imprisonment that is imposed by the Court

24   at the same time on that person for an additional

25   violation of this section."  I see.

24

Proceedings

1        MS. KOMATIREDDY:  In other words, your Honor,

2   two violations --

3        THE COURT:  Got it.  Yes.

4        MS. KOMATIREDDY:  -- of 1028A do not need to be

5   consecutive.

6        MR. MINDLIN:  We're not in that territory.

7        MS. KOMATIREDDY:  Right.

8        THE COURT:  Right.  But we're not in this

9   section with the wire fraud counts, we're in a different

10  section.  Okay.

11  ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████

15       MR. MINDLIN:  18 USC 3553(e) provides that on

16  motion to the government, the Court shall have the

17  authority to impose a sentence below a level established

18  by statute as a minimum sentence.

19       THE COURT:  Thank you.

20       MR. MINDLIN:  Yes, your Honor.

21       THE COURT:  Okay.  So thank you all for bearing

22  with me.  For all three counts, the maximum fine by

23  statute is $250,000 unless the alternative fine's

24  provision overrides that.  What is this, the maximum fine

25  on each count?

25

Proceedings

1       MR. MINDLIN:  The maximum fine for each of the

2   wire fraud counts is the greater of 250,000 or twice the

3   gross gain or gross loss.

4       THE COURT:  Remind me of the alternative fines

5   provision.  What's the citation for that?

6       MR. MINDLIN:  That's 18 USC 3571.

7       THE COURT:  3571.  Thank you.  Okay.  All

8   right.  So then I think we've established now both how

9   the United States Sentencing Guidelines operate with

10  respect to the counts of conviction and also what are the

11  statutory maximums and minimums for incarceration, for

12  supervised release, for a fine, and the like.

13      Are there any questions that the defendant has

14  at this point about anything we've said today?

15      THE DEFENDANT:  No, your Honor.

16      THE COURT:  Okay.  All right.  As I mentioned

17  earlier, I have reviewed the parties' written sentencing

18  submissions in detail, but let me turn to defense counsel

19  now with an opportunity to be heard at sentencing.

20      MR. GRASSO:  Thank you, your Honor.  I'm sorry,

21  I'm just filling in some of my notes.

22      THE COURT:  Take your time.

23      MR. GRASSO:  Thank you.

24      MR. MINDLIN:  Your Honor, before we begin, can

25  we have a five-minute recess?

26

Proceedings

1          THE COURT:  Yes.

2          MR. MINDLIN:  Thank you, Judge.

3          THE COURT:  We will reconvene a little bit

4   after 3:30.

5                    (Off the record)

6          THE CLERK:  We are back on the record.

7          MR. GRASSO:  So your Honor, may it please the

8   Court --

9          THE COURT:  I'm sorry, was there something that

10  the government wanted to take up?

11         MR. MINDLIN:  No, your Honor.

12         THE COURT:  Okay.  All right.  So we're back on

13  the record and the floor is with defense counsel for a

14  further statement in respect of sentencing.

15         MR. GRASSO:  Thank you, Judge.  And may it

16  please the Court.

17         Your Honor, as I had mentioned earlier, my

18  client is a very intelligent man.  He's also very

19  talented.  He has always cared for his family and the

20  people that he knows, the people that are closest to him

21  in his life.  He is a proud husband, he's a father of a

22  four-year-old daughter who goes by the name of Tasia

23  (phonetic).  She desperately needs his financial,

24  emotional support and guidance just as any four-year-old

25  daughter would.  She's been deprived of that throughout

27

Proceedings

1  this time obviously.

2            However, my client has accepted full

3  responsibility for his crimes.  He has admitted that what

4  he did was wrong and he takes full accountability for the

5  charged conduct.  He never resisted extradition.  ▆▆▆

29

Proceedings

1  extradition, I think that it's very important to focus on

2  the inherent inference that the chance of recidivism is

3  slim to none and could not possibly be lower.  It was

4  clear that he knew from the very start that what he did

5  was wrong and he immediately regretted his actions, and

6  he's made that very clear.

7           Additionally, as discussed in great detail in

8  his sentencing memorandum, Mr. Ovsyannikov received a

9  credit toward his sentence with a 1.5 multiplier for his

10  pre-extradition time that was spent in a Malaysia prison

11  where the conditions of confinement were unduly harsh and

12  inhuman.  Similarly --

13           THE COURT:  Sorry, say that again?  What is the

14  1.5 multiplier?

15           MR. GRASSO:  For his pre-extradition time spent

16  in the Malaysia prison.

17           THE COURT:  Right.

18           MR. GRASSO:  Where the conditions of

19  confinement were unduly harsh and inhuman.

20           THE COURT:  Just remind me where that 1.5,

21  where does this 1.5 multiplier come from.

22           MR. GRASSO:  It's in the sentencing memorandum,

23  your Honor.  It's proposed by our office --

24           THE COURT:  Oh, okay.

25           MR. GRASSO:  -- that it should be applied and

30

Proceedings

1  considered by your Honor in imposing sentence today.

2          THE COURT:  Got it.

3          MR. GRASSO:  In terms of the harshness of the

4  prison that he was at in Malaysia, I mean we're talking

5  no running water, days without food.  It's --

6          THE COURT:  I'm fully on board with the notion

7  that the conditions in the Malaysian prison were

8  grotesque.  I'm just asking where the 1.5 number comes

9  from.  Is that just something you --

10          MR. GRASSO:  It's a request by defense to be

11  considered by your Honor in today's sentencing.

12          Mr. Ovsyannikov we believe is entitled to

13  receive an extra credit for his incarceration at MDC

14  Brooklyn during the most restrictive conditions of

15  confinement, this is analogous, due to the pandemic of

16  novel COVID-19.  Recently, as discussed in the sentencing

17  memo as well, the media has provided even new information

18  about the horrible conditions of confinement at the

19  Metropolitan Detention Center in Brooklyn.  The reports

20  indicate that inmates at MDC in Brooklyn face

21  deteriorating living conditions such as no access to

22  water, spotty electricity, and the absence of hot food.

23  It's important to note that this Court provided the co-

24  defendant a two-year reduction in his sentence for

25  similar hardship conditions of confinement at MDC.  We

Proceedings

1    believe that Mr. Ovsyannikov should receive at least a

2    similar reduction.

3            Last but not least, certainly not least, purely

4    based on his immigration status, Mr. Ovsyannikov is not

5    eligible for any Bureau of Prison programs commonly

6    afforded to other inmates who are United States citizens

7    and thus he has to serve more time in a federal prison

8    than most other citizens between transport and different

9    government agencies being involved.  There is inherently

10   a longer period of time that is imposed on him regardless

11   of your Honor's sentence.  Therefore, the Court should

12   consider this disparity as a relevant sentencing factor

13   further reducing his sentence under the 3553 factors.

14           Considering the extent of Mr. Ovsyannikov's

15   remorse, his personal characteristics, his family

16   circumstances, his conditions of confinement, and the

17   other sentencing factors considered, discussed in detail,

18   we do have a very respectfully requested sentence.



32

Proceedings



9    So therefore, in light of all of the foregoing,

10   and other factors that I may not have mentioned that are

11   included in 3553 that may particularly stand out to your

12   Honor, I respectfully request that the Court impose a

13   non-guideline sentence of time served.  18 USC 3553(a)

14   reads that a sentence should be sufficient but no greater

15   to achieve the purpose of sentencing.

16       The sentence I propose would meet the needs of

17   the sentencing statute and at the same time would permit

18   both Mr. Ovsyannikov to unite with his family who needs

19   his financial and emotional support and begin rebuilding

20   a law-abiding life and with no intention of criminality

21   in his future.  Thank you very much.

22       THE COURT:  Thank you.  Does the government

23   wish to be heard?

24       MR. MINDLIN:  Yes, your Honor.

25       THE CLERK:  Remain seated, please.

Proceedings

THE COURT:  Thank you.  Okay.  So I
foreshadowed at the beginning that I might take a break
either before we hear from the defendant or immediately
after just to collect my thoughts on everything.  I'm
feeling a little bit less inclined to need that time
given everything that I've heard.  But why don't I turn
at this point to Mr. Ovsyannikov.  Would you like to be
heard today?

THE DEFENDANT:  Yes, your Honor.  I'd like to
furnish you my thoughts regarding my sentencing.  So
forgive me for reading this.  I didn't want to forget
anything.

As you know, I have been detained for three
years now away from my family, paying the price for the
terrible mistake that I made.  I'm deeply ashamed of the
fact that my four-year-old daughter all this time walked
without father by her side.  It's difficult for me to
realize that the most important years of raising a child
still is best years of being a parent, they are spent
away from my family.  As a result, I did not have the

Proceedings

1  opportunity to connect and maintain a healthy

2  relationship between father and daughter.

3          During my imprisonment, I had the opportunity

4  to connect with my family only once two years ago.  When

5  I was arrested in Kuala Lumpur, I realize that I had made

6  a terrible mistake.  While I was waiting for the police

7  to arrive to the airport to arrest me, I was with my wife

8  and daughter who was a year and six months old at the

9  time.  It was very painful to realize the fact that I

10 might not see them for a long time.  ████ ████ █████ ████
███ ██ █████ ██████ ██████ ██████ ██████ █████ █████ █████
███ █████ ███████ ████ ███████ ██████ ████ ██████ ███████
███ ██████ ██████ ████████ █ █████

14         There is no excuse for the crimes that I have

15 committed.  It's clear to me I made a mistake.  I admit

16 it.  And I'm very ashamed in front of all the people who

17 suffered financial losses due to my criminal activity.  I

18 thought a lot about what prompted me to commit the crime.

19 The reasons that I concluded is my own stupidity,

20 naivete, and hurt instinct.  I was blind and I shouldn't

21 have been involved in those dealings that led to my

22 arrest and ruined my life.  I have understood how my

23 mistakes were made and I have a firm desire to never

24 repeat them again.

25         Looking forward my (indiscernible) is a solid

40

Proceedings

1 man down the right path in the future.  I'm on the right

2 path in rebuilding my life and I am confident that I will

3 continue on the path and will be successful in that

4 endeavor.

5          I feel intent to return to my family, become

6 law abiding citizen, get my life back on track from which

7 it went off, and never again give myself the slightest

8 excuse to end up in jail again.

9          I know, your Honor, you will do what you

10 believe is right and I'm fully prepared to accept

11 whatever decision you make.  I got myself into this

12 predicament and I should take responsibility for my

13 conduct.  The only thing I want to promise you is that I

14 will never again appear as a criminal defendant in any

15 courtroom since I fully learned my lessons.  Thank you.

16          THE COURT: ████ ████  ████ ██ █ ██ ████  █

█ ████ ████ ████ ████ ████ ████ ████ ████ █ ████ ████

█ ████ ████ ████ ████ ████ █████ ████ ████ ████ ████

█ ████ ████ ████ ████ ████ ████ ████ ████ ████

█ ████ ████ ████ ██ ████ ██ ████ ████ ████ ████ ████

█ ████ ████ ████ ████ ████ ████ ████ ████ ████ ████

█ ████ ████ ████ ████ ████ ████ ████ ████

█ ████ ████ ████ ████ ████ ████ ████ ████ ████

█ ████ ████ ████ ████ ████ ████ ████ ██

Proceedings

1  ████████████ ██ ████ ████ ████ ████ ████ ████████ ████████

2  ██ █████████ ████ ████ ████

3  ██       ████ ████████ ████ ████ ████ ████████ ████████,

4  I have of course also considered all of the relevant

5  factors set out by the United States Congress at 18 U.S.

6  Code Section 3553(a), the statute that directs federal

7  judges to consider certain factors in connection with

8  sentencing.  I have considered the advisory guidelines

9  range in this case and I've considered the other factors

10 under Section 3553(a) and otherwise including the need

11 for a sentence to reflect the seriousness of the crime in

12 this case, the need to promote respect for the law, to

13 provide just punishment for the offense, and also, and

14 this is always an important one from my perspective, to

15 deter potential criminal conduct by both the defendant

16 sitting before me at the time of sentencing and also

17 anybody else out in the world who might be inclined to

18 engage in conduct of this kind in the future.

19          I've also of course considered the specific

20 nature and circumstances of the offense conduct here and

21 also Mr. Ovsyannikov's personal history and

22 characteristics.

23          As always, there are both aggravating and

24 mitigating factors here.  When I say aggravating, I mean

25 the factors that tend to support a higher sentence, and

42

Proceedings

1   when I say mitigating I mean the factors that tend to

2   support a lower sentence.  The judge's task at sentencing

3   of course is to balance both of those.

4           Let me talk about the aggravating factors first

5   and then go on to discuss the very important mitigating

6   factors thereafter.

7           So the offense conduct in this case is serious

8   and of course that weighs on the aggravating side of the

9   scale here.  In some ways the offense conduct is perhaps

10  even more serious than that of Mr. Zhukov, the financial

11  losses were greater.  And perhaps even more importantly,

12  the part of the scheme over which this defendant presided

13  involved the actual compromise of third-party computers

14  that were through viruses or malware or otherwise co-

15  opted to participate in the advertising fraud scheme.

16  Computers are of course for better or worse a very

17  significant part of people's connection to the world

18  these days and when someone's computer is compromised or

19  degraded or otherwise by a virus, by malware, or by

20  whatever, that has real world consequences for real human

21  beings.

22          Further on the aggravating end of the spectrum

23  here, it is clear that Mr. Ovsyannikov played a

24  significant leadership role as we discussed.  This was a

25  sophisticated scheme.  I think the government could have

43

Proceedings

1  sought the inclusion of an enhancement for sophisticated

2  means here.  I don't think that I listed that in my

3  guidelines calculation.  Is that correct?

4       MR. MINDLIN:  Your Honor, I think it was

5  applied.

6       THE COURT:  I'm sorry?

7       MR. MINDLIN:  I'm looking at the guidelines

8  calculation, your Honor.  Your Honor, the enhancement

9  that you applied for a scheme committed from outside the

10  United States is the same enhancement as the otherwise

11  sophisticated scheme.  So you effectively did apply that

12  enhancement.

13       THE COURT:  So jog my memory then.  Didn't both

14  enhancements apply in Mr. Zhukov's case?  It's not

15  particularly relevant here but I'm trying to do the gap

16  analysis in my head a little bit to understand why Mr.

17  Zhukov's guidelines were so much higher.  I'm going to

18  give the government a minute to talk about that amongst

19  themselves.

20       I'll just continue for my part to say

21  regardless of how it applies, regardless of how it

22  affects the sentencing guidelines, this was a

23  sophisticated scheme and obviously highly sophisticated

24  criminal behavior is more dangerous in many ways than

25  unsophisticated criminal behavior.

44

Proceedings

1          Finally, on the aggravating end of the spectrum

2    is the fact that, you know, so much of this scheme was

3    committed from outside the United States, and we've

4    talked at length in Mr. Zhukov's sentencing proceeding

5    and don't need really to rehash here in its entirety the

6    difficulties that the government has with respect to

7    investigating criminal behavior abroad, obtaining process

8    like arrest warrants for defendants who are located

9    abroad and bringing that kind of criminal activity to

10   justice in the United States.  Mr. Mindlin?

11          MR. MINDLIN:  Your Honor, I can address the gap

12   in the guidelines if you'd like --

13          THE COURT:  Yes, please.

14          MR. MINDLIN:  -- that you referred to.  So

15   first, the enhancement that you referred to, there is a

16   single enhancement under 2B1.1(b)(10)(B) which covers

17   offenses that are either committed from outside the

18   United States substantially or involved sophisticated

19   means.  So the enhancement that your Honor applied for an

20   offense outside the United States is the sophisticated

21   means enhancement.

22          THE COURT:  Yes.  For some reason I thought

23   that both enhancements applied in Mr. Zhukov's case.  I

24   could be wrong.

25          MR. MINDLIN:  Well there were significant other

45

Proceedings

1  reasons that Mr. Zhukov's guidelines were higher, your

2  Honor.  One is of course that he did not receive the

3  three points off for acceptance of responsibility.

4          THE COURT:  Right.

5          MR. MINDLIN:  He also received two more

6  points --

7          THE COURT:  Obstruction.

8          MR. MINDLIN:  -- because the conduct involves

9  money laundering and, yes, two points because of his

10  perjured testimony.

11          THE COURT:  Okay.  That is very helpful, so

12  thank you.

13          Let me turn to the mitigating side of the

14  scale.  Primary on that side of the scale is Mr.

15  Ovsyannikov's acceptance of responsibility.  I can't

16  overstate the importance, especially in a case like this

17  where so much of the conduct occurred abroad beyond the

18  easy investigative reach of United States law enforcement

19  of the decision that this defendant made to accept

20  responsibility ▄▄▄ ▄▄ ▄▄▄▄ ▄▄▄ ▄▄ ▄▄ ▄▄▄ ▄▄▄

   ▄ ▄▄ ▄▄▄▄▄ ▄▄ ▄▄▄▄▄ ▄▄ ▄▄ ▄▄▄ ▄▄▄▄▄ ▄▄▄ ▄

   ▄▄ ▄▄▄▄▄ ▄▄ ▄▄ ▄▄ ▄▄▄▄

23          And I'm certainly persuaded by comments that

24  both sides have made about the personal costs that that

25  acceptance of responsibility and everything that flowed

Proceedings

1  from it imposed on Mr. Ovsyannikov.  I do not at all

2  diminish the costs of having to be in quarantine for long

3  periods of time because you are coming in and out of the

4  facility at the MDC.  I've had a number of defendants in

5  other cases over the past year and a half express extreme

6  dissatisfaction let's say with having to come to court

7  for a status conference let's say because of the very

8  serious consequences that flow from that in terms of

9  needing to be quarantined on return to the MDC.  And I've

10 said it before in other contexts and will say it again

11 here, you know, it's not the fault of the Bureau of

12 Prisons that they found themselves dealing with the

13 pandemic that they did over the last year and a half, but

14 everybody would agree that The Bureau of Prisons should

15 be striving at all times to house inmates in better

16 circumstances, more humane circumstances than the

17 pandemic and the effort to mitigate it dictated over the

18 last year plus.

19        I won't go on and on about the quality of the

20 defendant's acceptance of responsibility ██ ████

21 ████████████████ ████ █████████ ███████ ██ ████ ████

22 ████ ████ █████ ████ ██████ ████ ████ █████ ███████ ██

23 ████ █████ ███████ ████ ████ ██████ ████ █████████ ████

24 ███ █████████ ████ ████████ ████ ████ ████ ████ ██████

25        Mr. Ovsyannikov has strong family ties as

47

Proceedings

1  evidenced by the letters that I received from so many

2  people.  He has, I think this is important, a history of

3  gainful employment.  That was something I was going to

4  discuss ████ ████ ██████ ████ ██ ████ ██████ ███████ ██

5  █ ███ ███ ████ █████████. That's an important

6  distinguishing factor I think between this case and Mr.

7  Zhukov's case where as the government noted, we were

8  dealing with an individual who had essentially been in

9  the business of committing advertising fraud as a career

10  rather than somebody who made a brief error in an

11  otherwise law-abiding life.

12          We have a first-time offender here in Mr.

13  Ovsyannikov.  And in addition to the very harsh

14  conditions at the MDC that you experienced during the

15  worst part of the COVID epidemic, we also have the fact

16  of your incarceration in Malaysia for what I understand

17  is just over four months in even worse conditions, and I

18  think that that in any assessment of the aggravating and

19  mitigating factors here is something that has to weigh in

20  your favor.

21          Finally, as was the case with Mr. Zhukov as

22  well, we're dealing with harm that is relatively

23  dispersed among lots and lots of victims.  I'm not saying

24  that that in any way excuses the decision to basically

25  steal money from others, but this case is distinguishable

48

Proceedings

1  from some fraud cases that we see here in that you didn't

2  have individuals whose lives were destroyed by the loss

3  of their life savings or other particularly egregious

4  aggravating factors like that.

5        So just summing up on where we are, you know,

6  describing the landscape before I impose sentence myself,

7  the United States Sentencing Guidelines range as we said

8  is 151 months at the low end.  The defense has requested

9  a sentence of time served which I believe is

10  approximately 33 months at the MDC.  The probation

11  department has requested 68 months custody on counts 1

12  and 5 as I mentioned to run consecutively to 24 months

13  custody on count 7 for a total of 92 months.

14        My view is netting down all these factors

15  together that a sentence of 36 months of incarceration in

16  total is the right amount of time in prison to satisfy

17  the sentencing factors in the goals of sentencing as set

18  out in Section 3553(a).  That may well be a sentence of

19  time served.  I'm not precisely sure how the math works

20  out there.

21        In terms of mechanics, I will impose a sentence

22  of 24 months each on count 1 and count 5 to run

23  concurrently to one another.  And then on count 7,

24  pursuant to the downward departure that I have indicated

25  I am granting here, a 12-month sentence which by statute

Proceedings

1    we have established must run consecutively.  So 24 months

2    on count 1, 24 months on count 5, counts 1 and 5 to run

3    concurrently with one another, and 12 months on count 7

4    to run consecutive to the sentences on counts 1 and 5.

5    And if I'm thinking through this correctly, that will

6    mean a grand total of 36 months in prison.  Do I have

7    that right?

8            MR. MINDLIN:  Yes, your Honor, that's how I

9    take it.

10           THE COURT:  Okay.  Does the defense have any

11   questions or comments on that?

12           MR. GRASSO:  I concur with that, your Honor.  I

13   believe that leaves about three months from time served.

14           THE COURT:  Well, any sentence greater than one

15   year, so as long as you're serving a year and a day or

16   more in the United States system, you become eligible for

17   a 15 percent reduction if I understand this correctly,

18   and 36 months times 85 percent, he may be below the 33

19   months that he's already served.

20           MR. GRASSO:  Yes, your Honor.

21           THE COURT:  The reason I say I don't know if

22   this is time served or not is because the good time

23   served calculation of what part of that 15 percent

24   discount is appropriate is not mine to make.  That's the

25   Bureau of Prisons and they will endeavor to make it

Proceedings

1    hopefully very quickly.

2            MR. GRASSO:  Yes, your Honor.  Thank you.

3            THE COURT:  I will impose a supervised release

4    term of two years but I want to state explicitly that I

5    do not believe the defendant needs to be kept in the

6    United States for supervised release if he's otherwise

7    going to be removed or deported.  Nothing about the term

8    of supervised release that I'm imposing should affect

9    that removal or deportation.  But to the extent he's in

10   the United States for whatever reason, I do make it a

11   condition of supervised release that he comply with the

12   restitution payment schedule in a restitution order to be

13   issued.  And as always, I invite the government to pipe

14   up with any questions or comments they have now or later.

15   The defendant, to the extent he's here, should provide

16   the U.S. Probation Department, or continue to provide the

17   U.S. Probation Department with full disclosure of his

18   financial records as he did today in the financial

19   affidavit that he submitted.

20           And finally, based on the information in the

21   PSR, I think the defendant should be excused from any

22   mandatory drug testing provisions under 18 U.S. Code

23   Section 3583(d).  However, if he's here and subject to

24   supervised release, he may be requested to submit to drug

25   testing from time to time.

51

Proceedings

1       I have already entered the final forfeiture

2  order in this case, correct?

3       MR. MINDLIN:  Yes, your Honor, you did.  It's

4  Docket Number 151.  You entered an order of forfeiture in

5  the amount of $14,626,206.50.

6       THE COURT:  Okay.  Do I have a copy of a

7  restitution order?  That, I have not seen.

8       MR. MINDLIN:  No, your Honor.

9       THE COURT:  So I'll just order on the record

10  that the defendant is to pay $33,800,000 in restitution

11  to Google, which may mean Alphabet.

12       MR. MINDLIN:  Now Alphabet.

13       THE COURT:  And to do so at a rate of $25 per

14  quarter for any period that he remains in custody of the

15  Bureau of Prisons, and at a rate of 10 percent of his

16  monthly gross income thereafter.  Based on that

17  restitution order, I do not impose a fine because the

18  restitution order will comprise his ability to pay a

19  fine.

20       A mandatory special assessment of $300 is

21  required and I order that now.  Taking all of this

22  together I find that this sentence is sufficient but not

23  greater than necessary to comply with the purposes of

24  sentencing.

25       Is there anything else the government wanted to

52

Proceedings

1    add about any aspect of the sentence I've just imposed?

2            MR. MINDLIN:  Just a couple of housekeeping

3    items, your Honor.

4            THE COURT:  Please.

5            MR. MINDLIN:  We'd ask if your Honor doesn't

6    consider himself already to have done so that you orally

7    pronounce the order of forfeiture.

8            THE COURT:  Orally pronounce the order of

9    forfeiture.  So yes, the forfeiture order that I entered

10   on the docket on October 21, 2020 --

11           MR. MINDLIN:  My colleagues in asset forfeiture

12   tell me that we ought to ask you to orally state that

13   that that is a forfeiture amount as issued, as indicated

14   in that order.

15           THE COURT:  The forfeiture amounts indicated in

16   that order, yes.  I think that's just because the law is

17   clear that the sentence is that which I impose on the

18   record here today, not which emerges in any paperwork

19   executed away from here.  And so yes, let me just say on

20   the record here that the forfeiture order I entered on

21   October 21, 2020, I order that now and make that a part

22   of the sentence in this case.  Is that what you're

23   asking?

24           MR. MINDLIN:  Yes, your Honor.  And we'd ask

25   that it be attacked to the judgment.

53

                          Proceedings

1          THE COURT:  And it shall be attached to the
2    judgment.  Thank you.
3          MR. MINDLIN:  In addition, your Honor, we'd ask
4    that you advise the defendant of his right to appeal.
5          THE COURT:  Yes.  Yes.  So that, I have a
6    little bit of housekeeping here which are first, are
7    there any remaining counts that should be dismissed?
8          MR. MINDLIN:  Yes, your Honor.  The government
9    moves for a dismissal of the following counts.  As to Mr.
10   Ovsyannikov only in the underlying indictment in this
11   case, the first indictment, count 2, 6, 8, 9, 10, 11, 12,
12   and 13.
13         THE COURT:  That motion is granted.  Mr.
14   Ovsyannikov, you have a right to appeal.  You can appeal
15   your conviction if you believe that your guilty plea was
16   somehow unlawful or involuntary, or if there is some
17   other fundamental defect in these proceedings that was
18   not waived either by your guilty plea or the plea
19   agreement.  In some circumstances, a defendant also has
20   the right to appeal his or her sentence, not just the
21   conviction.  Any such notice of appeal must be filed
22   within 14 days after the filing of the entry of a
23   judgment in this case or within 14 days of the filing of
24   a notice of appeal by the government.  And if requested,
25   the clerk of the court will prepare and file a notice of

54

Proceedings

1    appeal on your behalf.  If you can't afford to pay the

2    cost of an appeal or for appellate counsel, you will have

3    the right to apply for leave to appeal in forma pauperis,

4    which is Latin for I don't know exactly what, but it

5    means that the court system would pay the filing fee for

6    you and would supply you with appellate counsel if you

7    can't afford it on appeal.

8           Other housekeeping matters, the motion -- tell

9    me exactly what you're moving to seal.

10          MR. MINDLIN:  Your Honor, we move to seal the

11   minutes of this proceeding.

12          THE COURT:  In their entirety?

13          MR. MINDLIN:  If your Honor preferred, the

14   government could submit a, jointly with the defense, a

15   proposed redacted selection of what to seal, ██ ██

██ ██ ██ ██ ██ ██ ██ ██ ██ ██ ██ ██

██ ██ ██ ██ ██ ██ ██ ██

██ ██ .

19          THE COURT:  Yes.  I mean just given that there

20   are other co-defendants who may be sentenced in this

21   case, there are reasons we can actually think of why

22   somebody might want legitimate access to the record of

23   today's proceedings.  I would ask you to submit a

24   proposed redaction even if we're going to see large

25   swaths redacted rather than sealing the entire

55

Proceedings

1   proceeding.

2           MR. MINDLIN:  We'd ask only, your Honor, that

3   the transcript not be filed on the docket until we've had

4   a chance to make that proposal to the Court.

5           THE COURT:  Indeed.  Yes.  We will abstain from

6   filing anything publically until then.  I do respectively

7   direct the court reporter to produce a transcript of

8   today's proceeding but for transmission to the court's

9   deputy, not for filing yet on the docket.

10          Anything else from the government's

11  perspective?

12          MR. MINDLIN:  No, Judge.

13          THE COURT:  Anything else from the defense

14  perspective?

15          MR. GRASSO:  No.  Thank you, your Honor.  I'll

16  just join in the government's final two motions and I

17  thank you for granting them as well.

18          THE COURT:  Okay.  Mr. Ovsyannikov, let me just

19  say by way of summing up here this was a serious crime,

20  needless to say, that you were engaged in.  I do trust

21  that you will use your obviously prodigious talents for

22  good rather than otherwise as you go back to your family,

23  your community, and return to society.  I wish you the

24  best of luck in your coming endeavors and hope, as you've

25  indicated, that we not, you know, see you again in

56

Proceedings

1   circumstances like this.

2           THE DEFENDANT:  Thank you, your Honor.  Thank

3   you for trust.

4           THE COURT:  All right.  Thank you, everyone.

5   We'll be adjourned.

6           MR. GRASSO:  Thank you, your Honor.  Thank you,

7   everybody.

8                    (Matter concluded)

9                        -oOo-

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

57

# C E R T I F I C A T E

       I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

       I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

       IN WITNESS WHEREOF, I hereunto set my hand this **22nd** day of **December**, 2021.

*Mary Greco*

Transcriptions Plus II, Inc.